IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CARRIE S. WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-645-RAH-KFP |
| | ) | [WO] |
| WELLS FARGO BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

This is an employment discrimination and retaliation case. Carrie Wilson ("Wilson") is a former retail banking branch manager for Wells Fargo Bank ("Wells Fargo") in Ozark, Alabama who was fired from her job at Wells Fargo for allegedly falsifying documents in violation of company policy. In connection with her firing, Wilson claims that Wells Fargo discriminated and retaliated against her based on her race.

Wilson brings suit against Wells Fargo under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII") and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"). Wells Fargo has filed a motion for summary judgment (Doc. 29) ("the motion"), Wilson a response (Doc. 32), and Wells Fargo a short reply, (Doc. 33), and therefore the motion is ripe for resolution.  For good cause shown and for the reasons that follow, Wells Fargo's motion is due to be granted.

## I.    BACKGROUND

Wilson was hired at Wells Fargo in 2012 and was promoted to branch manager on November 13, 2016. (Doc. 29-2, p. 2.)  As branch manager, she reported directly to James Redd, regional banking district manager for Wells Fargo. (*Id*.) Wilson, like other employees, was expected to follow all applicable accounting standards, legal requirements, and the company's system of internal controls. (*Id*., p. 3.)

The employment decision at issue in this case concerned Wells Fargo's use of Deposit Technical Exception ("DTE") worksheets.  Sometimes, customer accounts are opened without all documents required by governing banking regulations, such as marriage licenses, death certificates, and customer signatures. (*Id*.)  When that happens, branch employees create a DTE worksheet, which allows the branch to document employee efforts to obtain the missing customer documentation. (*Id*.) During company audits, branches are assessed in categories including compliance with company standards, and a loss in points is assessed when DTE worksheets are not in compliance with standards. (*Id*.)

Sometime in early April 2018, both Ashley Knight (black female) and Mary Parkinson (white female), personal bankers who reported to Wilson at the Ozark branch, contacted Wells Fargo's corporate employee relations department and lodged whistleblower complaints about Wilson. (Doc. 29-3, p. 2.)  They each reported that during a surprise company audit of the Ozark branch on March 23, 2018, Wilson intentionally entered false information (including false dates and follow up activities) on multiple DTE worksheets, all with the purpose of concealing from the auditors various noncompliance issues with the DTE worksheets. (*Id*.)

These allegations were referred to the company's internal investigations department which immediately began an investigation. (Doc. 29-3, p. 3.)  After reviewing company records and conducting witness interviews, the investigators authored a report on May 15, 2018, that "confirmed falsification of bank records in this case" and recommended Wilson's termination. (*Id.*)

That same day, Redd and Tamra Addison, a human resources manager, were informed via email of the investigation's results and the recommendation that Wilson be terminated. (Doc. 29-2, p. 4; Doc. 29-3, p. 6.) Though Redd personally liked Wilson, he ultimately agreed with the decision to fire Wilson. (Doc. 29-2, p. 4.)

Redd and another manager met with Wilson on May 23, 2018, and notified her that she was fired. (Doc. 29-2, p. 5.)  Michelle Rymes, a black female, replaced Wilson as the Ozark branch manager. (*Id.*, p. 6.)

Wilson contested her termination through Wells Fargo's discharge review process. (Doc. 29-4, p. 274.) Wilson did not make any claim of racial discrimination in her initial termination review request, (*id.*, pp. 274-275), nor did she in connection with her unemployment claim.  But on August 13, 2018, in an email to employee relations consultant Melissa Pritchard, (*id.*, pp. 513-517), Wilson first raised the issue in reference to a conversation with Redd on May 8, 2018, about a hiring decision regarding two tellers. (*See* Doc. 29-4, pp. 279-280, 513.)

As to that conversation, in her deposition, Wilson testified that, though she did not remember verbatim what was said between her and Redd, Redd asked Wilson whether she took diversity into consideration when hiring the two new tellers at the Ozark branch. (Doc.

29-4, pp. 251, 513.) Wilson responded that it depended on how one defined diversity, explaining that she took the candidates' qualifications into account, and noted that both candidates she chose for the positions happened to be male. (*Id*.) Redd in turn responded "that's not what I am talking about," and Wilson asked him whether he was "asking did I hire [*sic*] a Caucasian?" (*Id*., p. 513.)  Redd replied that he was asking about race. (*Id*., pp. 252, 513.)  Wilson then asked Redd whether he asked any white branch managers that ran predominately white branches to consider diversity in their workplace (*Id*.)  Redd was "shocked" that Wilson asked that question, but replied "of course I do." (*Id*., p. 252.) Wilson also recalled telling Redd that the racial composition of the candidate pool included, to the best of her memory, five black applicants and one white applicant; she remembers explaining that she did not hire the white applicant because of apparent emotional issues. (*Id*. p. 253.)

For his part, Redd testified that during the May 2018 conversation with Wilson about hiring, he asked her "if she took diversity into account when making her hiring decisions, as required by the Company's diversity policy." (Doc. 29-2, p. 5.)  Redd "did not criticize" her hiring decisions, and Wilson never complained to him about this conversation. (*Id*.) Redd characterized their conversation as "an extremely brief, routine business conversation," and Redd averred that he has had "these same types of diversity conversations with other bank branch managers" in his district, "including with a Caucasian branch manager in the Andalusia, Alabama branch where a majority of employees . . . are Caucasian." (*Id*.)

4

Ultimately, despite Wilson's concern, Pritchard sent a letter to Wilson on August 30, 2018, upholding Wells Fargo's termination decision. (Doc. 29-4, p. 481.) Wilson requested a second level review, which on December 14, 2018, upheld the termination decision as well. (*Id*., pp. 482-483.)

Wilson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 1, 2018. In her charge to the EEOC, Wilson stated that on May 8, 2018, Redd "inquired about the selection of a Black candidate" for a position in her branch, and that she "questioned if he made a similar inquiry to the White staff," whereby she was discharged "15 days later." (Doc. 1-1, p. 2.)

## II.   STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Rule 56 [] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted).

On summary judgment motions, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party.

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).

A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-movant must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Holifield v. Reno*, 115 F.3d 1555, 1565, n. 6 (11th Cir. 1997); *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995).

## III.   ANALYSIS

Wilson makes race discrimination and retaliation claims against Wells Fargo, both related to her termination.  The Court will examine Wilson's Title VII and § 1981

6

substantive discrimination and retaliation claims in tandem, as they have the same general requirements of proof and use the same analytical framework. *See CBOCS W., Inc. v. Humphries,* 553 U.S. 442, 457 (2008); *Chapter 7 Trustee v. Gate Gourmet, Inc*., 683 F.3d 1249, 1256-57 (11th Cir. 2012).

First however, the Court would be remiss if it did not note that the party opposing summary judgment "must spell out his arguments squarely and distinctly, or else forever hold his peace," as the Court "may ignore arguments not adequately developed by [the] nonmovant." *Ratcliff v. Heavy Machines, Inc*., Case No. CIV.A. 06-0861-WS-M, 2007 WL 1791646, at *3 (S.D. Ala. June 20, 2007) (citing *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir. 1999) (the party opposing summary judgment "must spell out his arguments squarely and distinctly, or else forever hold his peace.")). "(T)he onus is upon the parties to formulate arguments." *Resol. Tr. Corp. v. Dunmar Corp*., 43 F.3d 587, 599 (11th Cir. 1995).

Wilson's brief in response to Wells Fargo's summary judgment motion barely makes an attempt to "spell out" her arguments, but, in an abundance of caution, the Court will still give her claims due consideration. *C.f. Resol. Tr. Corp*., 43 F.3d at 599 ("grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

A. **Wilson's Race Discrimination Claim**

To demonstrate a case of race discrimination based on circumstantial evidence

under the *McDonnell Douglas* framework,[1] Wilson must first establish a prima facie case of race discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). After establishing a prima facie case of discrimination, the burden of production is placed upon Wells Fargo to articulate a legitimate nondiscriminatory reason for its employment action. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Wilson may then seek to demonstrate that the proffered reason was not the true reason for her termination "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id*. at 256; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).

In order to establish a prima facie case of discrimination, Wilson "has to show four things: (1) that she was a member of a protected class, (2) that she was qualified for the job, (3) that she suffered an adverse employment action, and (4) that she was replaced by someone outside the protected class." *Hinson v. Clinch Cty., Georgia Bd. of Educ*., 231 F.3d 821, 828 (11th Cir. 2000).

Another way to meet the fourth analytical prong is for Wilson to demonstrate that she was treated less favorably than someone outside her protected class, i.e., by offering a "comparator." *See Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1091 (11th Cir. 2004). To be a valid comparator, an employee must be similarly situated "in all material respects," but need not be "nearly identical" to the plaintiff. *Lewis v. Union City, GA*, 918 F.3d 1213,

---

[1] Wilson did not present, nor does she argue, direct evidence of race discrimination.

1218-19 (11th Cir. 2019) (en banc). A valid comparison turns "not on formal labels, but rather on substantive likenesses." *Id*. at 1228. "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997), *abrogated on other grounds by Lewis*, 918 F.3d at 1224-25.

Here, Wells Fargo does not dispute that Wilson meets the first two prongs of the prima facie framework, i.e., that Wilson is a member of a protected class and that she was qualified for her job. And of course, job termination is the quintessential adverse employment action. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (adverse employment actions include "ultimate employment decisions ... such as termination, failure to hire, or demotion"). So, the only dispute about the prima facie case of Wilson's race discrimination claim is whether she was either replaced by a person outside of her protected class or otherwise treated worse than her proffered comparators.

Wilson does not offer any legitimate evidence that she was replaced by a person of a different protected class. In her summary judgment response, she identifies her replacement, Michelle Rhymes, and describes her as "German." (*See* Doc. 32, p. 8.) But Wilson does not actually argue that Rymes is not a member of her own protected class, i.e., black. In her deposition, Wilson was a little more forthcoming about Rhymes when she admitted "I guess [Rymes] identifies herself as African-American." (*See* Doc. 29-4, pp. 287-289.) Regardless, Wilson cannot meet her prima facie burden under this consideration because Wilson has failed to show that she was replaced by someone outside her protected

class.  Instead, from all that appears from the record, including Wilson's own testimony, Wilson was replaced by someone in her same protected class.

Then, to meet her prima facie burden on the fourth prong, Wilson must show that she was treated less favorably than a comparator. Wilson fails on this end, too.  In her Complaint, Wilson vaguely references several unidentified employees who "have engaged in similar or worse falsification of documents and have not been terminated" and who were subjected to better terms and conditions of employment, (*see* Doc. 1, p. 3), but she does not specify how they were similarly situated to her or who they even were.[2]   And in her summary judgment response, she altogether abandons any effort to substantively prove these allegations with any evidence.  Wilson cannot create a genuine issue of material fact based on her complaint allegations alone, and even those vaguely referenced employees do not come remotely close to meeting her burden of showing similarly situated "in all material respects."  *See Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1218 (11th Cir. 2019); *Maynard v. Bd. of Regents of Div. of Universities of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1289 (11th Cir. 2003); *see also Wood v. Berryhill*, Case No. 4:18-CV-558-RDP, 2019 WL 3413785, at *6, n. 3 (N.D. Ala. July 29, 2019) ("Because

---

[2] In the part of her brief discussing retaliation, Wilson vaguely references an accusation of document falsification about a subordinate, Parkinson, that she made to Redd. (Doc. 32, p. 10, citing Doc. 29-4, p. 141.) Wilson makes little other attempt to explain how Parkinson is a proper comparator. *See Lewis*, 918 F.3d at 1227-1228; *see also Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").  The attempt she does make is insufficient to meet her prima facie burden.

Plaintiff's briefs do not present adequate argument on this issue, the court is under no obligation to consider it.").

Accordingly, Wilson has failed to meet her burden of proof for race discrimination under *McDonnell Douglas* as it concerns her termination, and therefore Wells Fargo's motion for summary judgment as to Count I of the Complaint is due to be granted.

### B.  Retaliation

In Count II, Wilson advances a claim for retaliation in the context of her termination. Wilson can demonstrate a prima facie case of retaliation by showing that (1) she engaged in protected conduct; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action. *Crawford*, 529 F.3d at 970. Once she meets this burden, Wells Fargo must articulate a legitimate non-retaliatory reason for its employment action, which Wilson can rebut with evidence of pretext. *See Brown v. Alabama Dep't of Transp.*, 597 F.3d 1160, 1181-82 (11th Cir. 2010).  In its summary judgment motion, Wells Fargo challenges Wilson's ability to meet the first and third prongs.

As to the first prong, informal complaints made to an employee's superiors and the use of an employer's internal grievance procedures can qualify as protected conduct. *See Rollins v. State of Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989). "A complaint about an employment practice constitutes protected opposition only if the individual explicitly or implicitly communicates a belief that the practice constitutes unlawful employment discrimination." *Carson v. Metro. Atlanta Rapid Transit Auth. (MARTA)*, 572 F. App'x 964, 969 (11th Cir. 2014) (citing EEOC Compl. Man. (CCH) §§

8–II–B(2) (2006)); *see also Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 399 (2008) (the EEOC manual reflects "a body of experience and informed judgment to which courts and litigants my properly resort for guidance").

Here, Wells Fargo asserts that Wilson cannot show that she engaged in protected conduct prior to her termination.  To the extent Wilson relies upon her complaints of discrimination that occurred after her termination, those communications clearly cannot serve as the basis for actionable protected conduct. *See Hawk v. Atlanta Peach Movers*, 469 F. App'x 783, 786 (11th Cir. 2012); *McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008) (to establish causation, a plaintiff must demonstrate that the employer was aware of the protected conduct). The only other communication or action to which Wilson refers, concerns a May 2018 conversation with Redd about Wells Fargo's diversity practices and Wilson's hiring of two new tellers.  During that conversation, Redd asked Wilson whether she had taken diversity into account when she hired two new tellers for that office, to which Wilson responded and asked Redd whether he asked that question of white branch managers.

At best, even in the light most favorable to Wilson, the Court cannot conclude that there was any protected activity during this communication.  To be considered protected activity, "the employee must still, at the very least, communicate her belief that discrimination is occurring to the employer, and cannot rely on the employer to infer that discrimination has occurred." *Demers v. Adams Homes, Inc*., 321 F. App'x 847, 852 (11th Cir. 2009) (internal quotes omitted); *see Murphy v. City of Aventura*, 383 F. App'x 915, 918 (11th Cir. 2010); *Jeronimus v. Polk County Opportunity Council, Inc*., 145 F. App'x

319, 326 (11th Cir. 2005) (plaintiff's complaint "of being 'singled out,' being subjected to 'a campaign of harassment,' and working in a 'hostile environment'" was not protected conduct where plaintiff "never suggested that this treatment was in any way related to . . . race or sex"); *Hill v. IGA Food Depot*, Case No. 204CV00966WKWVPMWO, 2006 WL 3147672, at *5 (M.D. Ala. Nov. 2, 2006) ("If he was opposing something," Plaintiff did not demonstrate supervisor had reason to know he was complaining about an illegal employment practice, where, while Plaintiff did ask why the store had fewer African-American cashiers than was proportionate to its customer base, and thus might have alerted the supervisor that Plaintiff was asking a question about race, that inquiry "is a far cry from alleging that an employee or the company is intentionally refusing to hire African-Americans."); *Dowell v. Prime Healthcare Corp.*, Case No. CIV. A. 00-D-686-E, 2001 WL 611198, at *11 (M.D. Ala. May 4, 2001), *aff'd sub nom. Dowell v. Prime Healthcare*, 277 F.3d 1380 (11th Cir. 2001) ("The employee must complain of discrimination, not about unfairness and the like."); *Webb v. R & B Holding Co*., 992 F. Supp. 1382, 1389 (S.D. Fla. 1998) ("It is not enough for the employee merely to complain about a certain policy or certain behavior of co-workers and rely on the employer to infer that discrimination has occurred.").

Wilson's question to Redd about whether Redd discussed diversity with white branch managers could in theory be construed as a statement to him that she was concerned about the propriety of his remarks. Still, her statement "lacked sufficient detail to constitute statutorily protected expression," as it "does not appear that [Wilson] suggested to [Redd] in any way that she was complaining of [race] discrimination," and "(t)hus, her statement

13

does not constitute protected opposition sufficient to trigger Title VII's anti-retaliation provisions." *Snellgrove v. Teledyne Abbeville*, 117 F. Supp. 2d 1218, 1238, n.19 (M.D. Ala. 1999) (citing *Webb*, 992 F.Supp. 1382; *EEOC v. Shoney's, Inc*., 536 F.Supp. 875, 877 (N.D. Ala. 1982) ("His very generalized complaints were that he was not being treated fairly in that other managers could date waitresses who worked at the restaurant. There is nothing in his own testimony of what he said that would put Shoney's on notice that he was protesting an illegal employment practice."); *Galdieri–Ambrosini v. National Realty & Development Corp*., 136 F.3d 276, 292 (2nd Cir. 1998) ("[Plaintiff's] complaints to Simon and Chiaro did not state that [she] viewed Simon's actions as based on her gender, and there was nothing in her protests that could reasonably have led National Realty to understand that that was the nature of her objections."); *Jurado v. Eleven–Fifty Corporation*, 813 F.2d 1406, 1411 (9th Cir. 1987) (finding expression not protected because "Jurado has not shown that he ever opposed the format change as discriminatory before he was fired. He merely opposed the change for personal reasons.")).

Still, even assuming that somehow Wilson's conversation with Redd could be construed as a complaint to Redd, Wilson must still show that her complaint was based on a "good faith reasonable belief" that her employer was engaged in unlawful discrimination. *See Clover v. Total Sys. Servs., Inc*., 176 F.3d 1346, 1351 (11th Cir. 1999). Wilson must show that she subjectively believed that unlawful discrimination against her was occurring and that her belief was objectively reasonable in light of the facts and record present. *See Howard v. Walgreen Co*., 605 F.3d 1239, 1244 (11th Cir. 2010). "The objective reasonableness of an employee's belief that her employer has engaged in an unlawful

14

employment practice must be measured against existing substantive law." *Clover*, 176 F.3d at 1351.

Wilson offers nothing on that account. To be sure, an employer's "intent may be difficult to discern," *Reeves v. C.H. Robinson Worldwide, Inc*., 594 F.3d 798, 813 (11th Cir. 2010), but "it is not objectively reasonable to presume that, simply because an employee has been subjected to seemingly inexplicable negative treatment, the true reason for the treatment must be unlawful discrimination. In other words, it is not objectively reasonable to infer race or gender discrimination merely from the lack of a clear reason for an employer's mistreatment of its employee," *Herron-Williams v. Alabama State Univ*., 805 F. App'x 622, 632 (11th Cir. 2020). Though Wilson offers that she was perhaps uncomfortable or offended with Redd's question, she did not actually state to him that she thought his question was discriminatory, and she did not otherwise complain to him or anyone else at Wells Fargo about this May 2018 conversation.

Finally, even assuming that Redd and Wilson's conversation constituted protected activity,[3] Wilson makes little other argument as to the causal connection between that conversation and Wells Fargo's termination decision which was made upon whistleblower

---

[3] In her reply brief, Wilson also makes vague reference to "complaints" made in the summer of 2018. (Doc. 32, p. 9.) She offers no other detail or explanation about those dates apart from the fact that they were the two dates on which she made requests to corporate to review her termination. As previously discussed, in the June 2018 request, Wilson did not mention discrimination, and in the August 2018 email, while Wilson did mention alleged discriminatory conduct, the email was sent to Wells Fargo three months *after* she was fired, which, as a matter of logic, could not have caused the decision to terminate her employment. *See Hawk v. Atlanta Peach Movers*, 469 F. App'x 783, 786 (11th Cir. 2012); *McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008) (to establish causation, a plaintiff must demonstrate that the employer was aware of the protected conduct).

complaints made by others, an investigation conducted by others, and an employment recommendation made by others. Wilson hinted at a theory of temporal causation in her EEOC charge of discrimination, (*see* Doc. 1-1, p. 2), but she does not provide any explanation whatsoever about how this conversation caused her termination. "(I)n order to survive summary judgment and be entitled to a jury trial, there must be a genuine dispute as to whether the protected activity was a but-for cause of the adverse employment action." *Herron-Williams*, 805 F. App'x at 633 (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)). With nothing on that score in her brief, Wilson cannot meet the final prong of her prima facie burden. *See Resol. Tr. Corp.,* 43 F.3d at 599 ("grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); *ibid* ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it ...."); *see also Higgins*, 194 F.3d at 260 (a "party who aspires to oppose a ... motion must spell out his arguments squarely and distinctly, or else forever hold his peace," as the district court may ignore arguments not adequately developed by the nonmovant).

Therefore, because Wilson cannot meet her prima facie burden on her claim of retaliation, Wells Fargo's motion for summary judgment as to Count II is also due to be granted.

### C.  Reason for Termination – Pretext

Wilson's discrimination and retaliation claims also fail for an additional reason.  As previously explained, Wells Fargo's stated reason for termination is Wilson's falsification of documents in violation of company policy, and as the Eleventh Circuit has held, breach

of the employer's internal policies may constitute a legitimate reason. *See Schoenfeld v. Babbitt*, 168 F.3d 1257, 1269 (11th Cir. 1999).

Thus, the burden shifts back to Wilson to offer that this reason was pretext. *Burdine*, 450 U.S. at 256. Wilson offers barely anything in response, and further, even admitted to investigators that she filled out her DTE worksheets in violation of company policy. (Doc. 29-3, p. 6.)  Wilson offers that the DTE worksheet process is flawed and that she did not intentionally falsify documents. However, to demonstrate pretext, Wilson must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010) (citation omitted). "A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute [her] business judgment for that of the employer," as she does in her quibbles with the DTE process, so "provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and [she] cannot succeed by simply quarreling with the wisdom of that reason." *Id.* at 1265–66 (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000)).

Wilson's statement that she did not intentionally falsify the documents is not dispositive and certainly not dispositive in her favor. "The relevant inquiry is therefore whether the employer in good faith believed that the employee had engaged in the conduct that led the employer to discipline the employee." *Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1148 (11th Cir. 2020). "The inquiry . . . is limited to whether [the

employer] believed that [the employee] was guilty of [misconduct], and if so, whether this belief was the reason behind [the employee's] discharge." *Elrod v. Sears, Roebuck & Co*., 939 F.2d 1466, 1470 (11th Cir. 1991) (citing *Hawkins v. Ceco Corp*., 883 F.2d 977, 980 n. 2 (11th Cir.1989), *cert. den*., 495 U.S. 935 (1990) (That the employee did not in fact engage in misconduct reported to the employer is irrelevant to the question whether the employer believed the employee had done wrong.)). Federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions." *Elrod*, 939 F.2d at 1470. An "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984).

Simply put, Wilson's proffered evidence "is too weak to raise a genuine fact issue." *Alvarez,* 610 F.3d at 1268 (citing *Reeves v. Sanderson Plumbing Prod., Inc*., 530 U.S. 133, 148 (2000) (the employer is entitled to judgment as a matter of law if the plaintiff creates "only a weak issue of fact" as to whether employer's proffered reason was untrue and there was "abundant and uncontroverted independent evidence that no discrimination had occurred"). Thus, both her discrimination and retaliation claims fail.

## IV.   CONCLUSION

For the foregoing reasons, Wells Fargo's Motion for Summary Judgment (Doc. 29) on Counts I and II of the Complaint is due to be and is hereby GRANTED. This matter in its entirety is hereby dismissed.  A separate judgment will issue.

DONE, on this the 23rd day of April, 2021.

               /s/ R. Austin Huffaker, Jr.
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE